## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LIMETREE BAY SERVICES, LLC, *et al*,[1] | § | Case No. 21-32351 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| LIMETREE BAY TERMINALS, LLC d/b/a | § | Adv. Pro. No. _____ |
| OCEAN POINT TERMINALS and DAVID M. | § | |
| DUNN, AS LIQUIDATING TRUSTEE OF THE | § | |
| LBR LIQUIDATING TRUST, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| BRIT SYNDICATE 2987, CHAUCER | § | |
| SYNDICATE 1084, EUCLID | § | |
| ENVIRONMENTAL UNDERWRITERS, LLC | § | **JURY TRIAL DEMANDED** |
| D/B/A ENVIANT, HAMILTON SYNDICATE | § | |
| 3334, LIBERTY SYNDICATE 4472, and | § | |
| RENAISSANCERE SYNDICATE 1458, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## COMPLAINT

Plaintiffs, Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("LBT") and David

M. Dunn, as Liquidating Trustee for the LBR Liquidating Trust (the "Trustee" and together with

LBT, the "Plaintiffs"), file this Complaint for damages and declaratory judgment against the

Defendants, Brit Syndicate 2987, Chaucer Syndicate 1084, Euclid Environmental Underwriters,

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay  Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).

LLC, Hamilton Syndicate 3334, Liberty Syndicate 4472, and RenaissanceRe Syndicate 1458 (collectively, "Enviant"), alleging as follows:

## I.   INTRODUCTION

1.      This is an insurance coverage lawsuit.  LBT owns and operates a petroleum product storage facility and associated docking facilities (the "Terminal").  The Trustee is the successor-in-interest to Limetree Bay Refining, LLC ("LBR"), a debtor in these chapter 11 cases and the former owner of a petroleum refinery (the "Refinery") located adjacent to the Terminal on a 2,000-acre site on the southern coast of St. Croix (the "Limetree Bay Site").  Enviant issued pollution liability insurance policies to LBT and LBR and certain of their respective affiliates to cover the pollution-related risks arising out of operating the Terminal and the Refinery.[2]

2.      After Enviant issued those pollution liability policies to Plaintiffs, several lawsuits were filed against LBT, LBR, and certain other defendants prior to LBR initiating its bankruptcy proceeding.[3]  Generally speaking, the Underlying Lawsuits (defined below) alleged that LBT, LBR, and the other defendants are liable for bodily injury, property damage, and pollution cleanup expenses resulting from the discharge of pollutants from the Refinery.  LBT and LBR subsequently sought insurance coverage and a defense for the claims raised in the Underlying Lawsuits under their pollution liability policies provided by Enviant.

3.      Enviant refused to defend LBT and LBR in the Underlying Lawsuits or to provide coverage for the claims raised in the Underlying Lawsuits based on its position that insurance

---

[2]     Specifically, the policies were issued to Limetree Bay Ventures, LLC and its subsidiaries, which include LBT and LBR.  Pursuant to the Plan (defined below) and as discussed herein, the Trustee is the successor-in-interest to LBR and has standing and authority to pursue rights and claims under these policies.

[3]     These lawsuits include four putative class action suits and a lawsuit commenced by the United States on behalf of the EPA, detailed below.

2

policies other than Enviant's pollution liability policies should provide coverage first, *i.e.*, before Enviant provides coverage.  Enviant's position is incorrect.

4.      Enviant's pollution liability policies state that Enviant provides coverage after other insurance policies provide coverage only if "other valid and collectible insurance or indemnification is available for any loss covered under" Enviant's policies.  There is no "other valid and collectible insurance or indemnification for" the amounts Plaintiffs are seeking to recover under Enviant's policies in this action.  Indeed, no other insurance company is defending or providing coverage to Plaintiffs for the Underlying Lawsuits.

5.      Thus, Enviant's position is wrong, and there is no reasonably legitimate or arguable reason for Enviant's refusal to provide coverage to and defend Plaintiffs in the Underlying Lawsuits.  Enviant's refusal to defend or provide coverage to Plaintiffs in the Underlying Lawsuits is a breach of the contracts and amounts to bad faith.

## II.      **PARTIES**

6.      Plaintiff Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals is a limited liability company with operations based in the U.S. Virgin Islands.

7.      Plaintiff David M. Dunn, as the Liquidating Trustee of the LBR Liquidating Trust, is an individual residing in Stamford, Connecticut.

8.      Defendant RenaissanceRe Syndicate 1458 ("RenaissanceRe") is a syndicate at Lloyd's, London.  Defendant RenaissanRe may be served with process under Bankruptcy Rule 7004(b) through its appointed agent, Enviant, 250 Park Avenue, 7th Floor New York, NY 10017.

9.      Defendant Liberty Syndicate 4472 ("Liberty") is a syndicate at Lloyd's, London. Defendant Liberty may be served with process under Bankruptcy Rule 7004(b) through its appointed agent, Enviant, 250 Park Avenue, 7th Floor New York, NY 10017.

3

10.     Defendant Hamilton Syndicate 3334 ("Hamilton") is a syndicate at Lloyd's, London.  Defendant Hamilton may be served with process under Bankruptcy Rule 7004(b) through its appointed agent, Enviant, 250 Park Avenue, 7th Floor New York, NY 10017.

11.     Defendant Chaucer Syndicate 1084 ("Chaucer") is a syndicate at Lloyd's, London. Defendant Chaucer may be served with process under Bankruptcy Rule 7004(b) through its appointed agent, Enviant, 250 Park Avenue, 7th Floor New York, NY 10017.

12.     Defendant Brit Syndicate 2987 ("Brit") is a syndicate at Llyod's London. Defendant Brit may be served with process under Bankruptcy Rule 7004(b) through its appointed agent, Enviant, 250 Park Avenue, 7th Floor New York, NY 10017.

13.     Upon information and belief, Defendant Euclid Environmental Underwriters, LLC does business as Enviant.  Defendant Euclid Environmental Underwriters LLC may be served with process under Bankruptcy Rule 7004(b) at 250 Park Avenue, 7th Floor New York, NY 10017.

### III.     JURISDICTION AND VENUE

14.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and this Court may enter a final order or judgment consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     This adversary proceeding is commenced pursuant to section 105(a), of title 11 of the United States Code (the "Bankruptcy Code"), section 2201 of title 28 of the United States Code, and rules 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

16.     Pursuant to Bankruptcy Rule 7008 and rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas, Plaintiffs consent to the entry of final orders or judgments by

4

this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## IV.    FACTUAL BACKGROUND

17.    The Terminal and the Refinery are located adjacent to each other on the Limetree Bay Site.  Historically, the Terminal and Refinery have shared certain resources and facilities in connection with the operation of their respective businesses.  When operating, the Refinery is capable of processing over 200,000 barrels of crude oil and other feedstocks per day.  The Terminal can store up to 34,000,000 barrels of barrel crude and petroleum product.

18.    On July 12, 2021 (the "Petition Date"), LBR and certain of its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  Terminals was not and is not a Debtor.  On December 21, 2021, the Court entered an order approving the sale of the Refinery and substantially all the other assets of the Debtors to certain third parties.[4]  On May 20, 2022, the Court entered an order [Case No. 21-32351, Docket No. 1454] approving and confirming the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Limetree Bay Services, LLC and Affiliated Debtors* (the "Plan").  On June 10, 2022, the Effective Date of the Plan occurred.[5]

19.    Under the terms of the Plan, on the Effective Date, the Liquidating Trust was established, the Trustee was appointed as the Liquidating Trustee, and the Debtors' remaining assets, including all Causes of Action and Insurance Policies, vested in the Liquidating Trust.[6]  The Trustee is the representative of the Debtors' estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and is vested with the power and authority to administer the

---

[4]    *See* Case No. 21-32351, Docket No. 977.

[5]    *See* Case No. 21-32351, Docket No. 1511.

[6]    *See* Plan Arts. IX, X, and XIV.D.

EMF_US 91182242

Debtors' estates and the Liquidating Trust Assets, including, without limitation, pursuing all Causes of Action or other claims related to the Insurance Policies.

### A.     The Environmental Site Pollution Policies

20.     Enviant issued a pollution liability policy numbered ENVP0000296-20 to Plaintiffs and others (the "Primary Pollution Liability Policy").  Attached hereto as **<u>Exhibit A</u>** is the policy that Enviant asserts is the Primary Pollution Liability Policy.

21.     Enviant issued a pollution liability excess policy numbered ENVX0000256-20 to Plaintiffs and others (the "Excess Pollution Policy" and together with the Primary Pollution Liability Policy, the "Pollution Policies").  Attached hereto as **<u>Exhibit B</u>** is the policy that Enviant asserts is the Excess Pollution Policy.

22.     The Primary Pollution Liability Policy identifies "Enviant" as the "Insurer." *See* Ex. A § VII, U. (defining Insurer as "the entity set forth in Item 8. (c) of the Declarations") & Declarations, Item 8(c) (identifying "Enviant").

23.     The Excess Pollution Policy generally follows the terms and conditions in the Primary Pollution Liability Policy.

24.     RenaissanceRe, Liberty, Hamilton, Chaucer, and Brit are identified on endorsements in the Pollution Policies titled "Schedule of Participation."

25.     Plaintiffs are insureds under the Pollution Policies.

26.     According to the Legal Liability for Clean-Up Expense insuring agreement, the Primary Pollution Liability Policy provides the following coverage: "The **insurer** will pay on behalf of the **insured** those sums that the **insured** becomes legally obligated to pay as **loss** because of **clean-up expense** resulting from a **pollution condition** on, at, under, or migrating from or through a **covered location.**"

6

27.     According to the Legal Liability for Bodily Injury and Property Damage insuring agreement, the Primary Pollution Liability Policy proves coverage for the following: "The **insurer** will pay on behalf of the **insured** those sums that the **insured** becomes legally obligated to pay as **loss** because of **bodily injury** or **property damage**, resulting from a **pollution condition** on, at, under, or migrating from or through a **covered location**."

28.     The Primary Pollution Liability Policy contains the following defined terms:

a.      **Bodily injury** means physical injury, sickness, mental anguish, shock or emotional distress or disease sustained by a person, including death resulting therefrom. **Bodily injury** also includes medical monitoring cost when accompanied by physical injury

b.      **Clean-up expense** means reasonable and necessary expense, including **legal expense** and **restoration expense**, incurred with the **insurer's** prior written consent, to investigate, abate, contain, treat, remove, remediate, monitor, neutralize or dispose of contaminated soil, surface water or groundwater caused by a **pollution condition** but only:

(1)      To the extent required by **environmental law** or, in the absence of applicable **environmental law**, as determined to be reasonable and necessary by an **environmental professional**;

(2)      If required to satisfy a **voluntary clean-up program**; or

(3)      If incurred by any governmental entity of the United States of America including its territories and possessions, Puerto Rico or Canada, or by a third-party.

c.      **Covered location** means real property owned or managed by, or leased or rented to, the **insured** and listed in Item 9. of the Declarations.

d.      **Loss** means, as applicable for each Coverage:

(1)      Damages because of **bodily injury** or **property damage**;

(2)      **Clean-up expense**;

(3)      **Emergency response expense**;

(4)      **Business interruption expense** and **extra expense**; and

(5)      **Legal expense**.

EMF_US 91182242

**Loss** does not include **crisis management expense** or Supplementary Payments.

e.    **Pollution condition** means:

(1)    The discharge, emission, seepage, migration, dispersal, release or escape, or illicit abandonment by a third party without the **insured's** consent, of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals, hazardous substances, petroleum hydrocarbons, low-level radioactive matter or waste, medical, infectious or pathological waste or waste materials, methamphetamines, electromagnetic fields, or **biological agent** into or upon land, or any structure on land, the atmosphere or any watercourse or body of water including groundwater, provided such condition is not naturally present in the environment in the concentration or amounts discovered; or

(2)    **Microbial matter** or legionella pneumophila in any structure on land and the atmosphere contained within that structure.

f.    **Property damage** means:

(1)    Physical injury to tangible property of parties other than an **insured**, including all resulting loss of use and diminished value of such property;

(2)    Loss of use of tangible property of parties other than an **insured** that is not physically injured or destroyed, arising out of physical injury to or destruction of other tangible property; or

(3)    **Natural resource damage**.

**Property damage** does not include **clean-up expense**.

**B.    Refinery Incidents**

29.    Plaintiffs and other defendants have been sued in four putative class action proceedings and by the United States of America relating to alleged pollution incidents.  The putative class action proceedings are *Cotton v. Limetree Bay Ventures, LLC*, Case No. 1:21-cv-00261 (D.V.I.), *Shirley v. Limetree Bay Ventures LLC*, Case No. 1:21-cv-00259 (D.V.I.), *Boynes v. Limetree Bay Ventures, LLC*, Case No. 1:21-cv-00253 (D.V.I.), and *Charles v. Limetree Bay Ventures, LLC*, Case No. 1:21-cv-00260 (D.V.I) (the "Putative Class Actions").  The United States

8

of America's lawsuit states it was filed at "the request of the Administrator of the United States Environmental Protection Agency" and is in an action styled *United States of America v. Limetree Bay Refining, LLC*, No. 1:21-cv-264 (D.V.I) (the "<u>EPA Action</u>" and together with the Putative Class Actions, the "<u>Underlying Lawsuits</u>").

30.     As a general matter, the Underlying Lawsuits allege that LBT and LBR (as well as other defendants) are liable for bodily injury, property damage, and clean-up expenses resulting from one or more pollution incidents that occurred at the Refinery.

31.     The Refinery at which the alleged pollution incident or incidents occurred is a covered location under the Pollution Policies.

32.     Plaintiffs have incurred millions of dollars and will continue to incur expenses defending themselves in the Underlying Lawsuits.

33.     The Primary Pollution Liability Policy requires Enviant to defend and indemnify Plaintiffs in the Underlying Lawsuits.  Upon exhaustion of the Primary Pollution Liability Policy, the Excess Pollution Policy requires the same.

**C.     Coverage under the Enviant Policies**

34.     The Pollution Policies cover the Underlying Lawsuits.

35.     In fact, Enviant has never claimed otherwise.

36.     Instead, Enviant has asserted that the Pollution Policies provide coverage only after the limits of other insurance policies are paid, *i.e.*, only after those other insurance policies exhaust.

37.     Enviant's position is incorrect, is without any reasonably legitimate or arguable reason, and is taken with reckless disregard for Plaintiffs' rights.

38.     The Pollution Policies state that "[i]f other valid and collectible insurance or indemnification is available for any loss covered under" Enviant's policies, then Enviant's

9

"obligations are limited as follows: 1. This insurance shall be excess over any policy(ies) which are available for loss covered under this Policy . . . ."

39.     However, there is no "other valid and collectible insurance or indemnification for" the amounts Plaintiffs are seeking to recover under Enviant's policies in this action.  Indeed, no other insurance company is defending or providing coverage to Plaintiffs for the Underlying Lawsuits.

40.     Plaintiffs have satisfied any self-insured retention required to trigger coverage under the Pollution Policies and their damages exceed the Primary Pollution Liability Policy limits.

41.     Plaintiffs performed all of their obligations under the Pollution Policies, and any conditions precedent to coverage either have occurred or been satisfied, they have been waived or excused, or they are otherwise inapplicable.

42.     No exclusions in the Pollution Policies bar coverage for the Underlying Lawsuits.

43.     Enviant's refusal to defend or provide coverage to Plaintiffs in the Underlying Lawsuits is without legitimate or arguable basis, and Enviant is acting in bad faith, with an improper motive, and with reckless indifference to Plaintiffs rights, by continuing to deny coverage.

## V.     JURY TRIAL DEMANDED

44.     Plaintiffs hereby demand a jury trial on all issues triable to a jury.

## VI.     CAUSES OF ACTION

### Count I (Breach of Contract)

45.     Plaintiffs repeat and reallege the allegations in the preceding paragraphs.

46.     The Pollution Policies are valid and enforceable contracts between Plaintiffs and Enviant.

EMF_US 91182242

47.     Plaintiffs complied with all applicable provisions of the Pollution Policies, or Enviant waived those provisions or is estopped from asserting any purported non-compliance with those provisions.

48.     Enviant breached the Pollution Policies by refusing to defend Plaintiffs in the Underlying Lawsuits and refusing to provide coverage to the Plaintiffs under the terms of those policies.

49.     Enviant is acting in bad faith with an improper motive, and with reckless indifference to Plaintiffs' rights in refusing to defend Plaintiffs and by denying coverage.

50.     Plaintiffs have sustained and continue to sustain damages as a result of Enviant's breach of the Pollution Policies.

### Count II (Declaratory Judgment)

51.     Plaintiffs repeat and reallege the allegations in the preceding paragraphs.

52.     Plaintiffs seek the Court's declaration of the parties' rights and duties under the Pollution Policies pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(9).

53.     LBR's rights under the Pollution Policies were assets of the Debtors' estates, which have now vested in the Liquidating Trust, and proceeds from those policies may be available to provide a recovery to creditors in these chapter 11 cases.

54.     An actual controversy within the Court's jurisdiction exists between Plaintiffs and Enviant concerning Enviant's obligation to defend and indemnify Plaintiffs in the Underlying Lawsuits.

55.     The controversy between Plaintiffs and Enviant is ripe for judicial review.

56.     Accordingly, Plaintiffs seek a declaration from the Court that Enviant is presently obligated to defend and indemnify Plaintiffs with respect to the Underlying Lawsuits.

EMF_US 91182242

**Count III (Bad Faith)**

57.      Plaintiffs repeat and reallege the allegations in the preceding paragraphs.

58.      Enviant acted in bad faith in its refusal to provide a defense and indemnification to Plaintiffs in the Underlying Lawsuits.

59.      Enviant did not have a legitimate or arguable reason for refusing to defend Plaintiffs and by denying coverage.

60.      Plaintiffs have suffered and continue to suffer damages as a result of Enviant's bad faith and are entitled to punitive damages.

## VII.      **PRAYER FOR RELIEF**

61.      Plaintiffs request judgment against Enviant as follows:

a.      An order requiring Enviant to provide insurance coverage to Plaintiffs in the Underlying Lawsuits;

b.      A declaration from the Court that Enviant must defend and indemnify Plaintiffs in the Underlying Lawsuits;

c.      For damages, including actual, compensatory, consequential, special, exemplary, in an amount to be proved at trial;

d.      For punitive damages;

e.      Interest, including pre-judgment, post-judgment, and statutory interest;

f.      An award of attorneys' fees and costs of suit incurred; and

g.      For such other and further relief, including any equitable relief, as the Court deems just and proper.

EMF_US 91182242

Dated:  October 21, 2022
       Houston, Texas

Respectfully Submitted,

*/s/  Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Joseph P. Rovira (TX Bar No. 24066008)
Philip M. Guffy (TX Bar No. 24113705)
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:    713-220-4200
Fax:    713-220-4285
Email:  taddavidson@HuntonAK.com
         josephrovira@HuntonAK.com
         pguffy@HuntonAK.com

Lawrence J. Bracken II (*pro hac vice* forthcoming)
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, GA 30308
Tel:    404-888-4000
Fax:    404-888-4190
Email:  lbracken@HuntonAK.com

Patrick M. McDermott (*pro hac vice* forthcoming)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Tel:    804-788-8200
Fax:    804-788-8218
Email:  pmcdermott@HuntonAK.com

*Attorneys for Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals and David M. Dunn, as Liquidating Trustee of the LBR Liquidating Trust*

EMF_US 91182242