## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al,* | § | |
| | § | **Case No. 21-32351 (DRJ)** |
| Debtors.[1] | § | |
| | § | **(Jointly Administered)** |
| | § | |
| | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ |
| | § | |
| **LIMETREE BAY TERMINALS, LLC d/b/a OCEAN POINT TERMINALS and DAVID M. DUNN, AS LIQUIDATING TRUSTEE OF THE LBR LIQUIDATING TRUST;** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Adversary No. 22-03306** |
| **EUCLID ENVIANT, LLC f/k/a EUCLID ENVIRONMENTAL UNDERWRITERS, LLC d/b/a ENVIANT and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NOS. ENVP0000296-20 and ENVX0000256-20;** | § § § § § § § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § § | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).

**DEFENDANTS' SUPPLEMENTAL MOTION (I) TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT IN THE ADVERSARY PROCEEDING PURSUANT TO RULES 12(B)(6) AND 12(B)(7) OF THE FEDERAL RULES OF CIVIL PROCEDURE; OR (II) IN THE ALTERNATIVE, TO REQUIRE PLAINTIFFS TO JOIN NECESSARY PARTIES PURSUANT TO <u>RULE 19 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Defendants Euclid Enviant, LLC f/k/a Euclid Environmental Underwriters, LLC ("Enviant")[2] and Certain Underwriters at Lloyd's, London Subscribing to Policy Nos. ENVP0000296-20 and ENVX0000256-20 (the "<u>Underwriters</u>," and, collectively with Enviant, the "<u>Defendants</u>") file this Supplemental Motion (I) to Dismiss Plaintiffs' Second Amended Complaint in the Adversary Proceeding Pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure; or (II) In the Alternative, to Require Plaintiffs to Join Necessary Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure, and, in support thereof, state the following:

---

[2] Enviant is not a proper defendant because it is not an insurer. Rather, it is a "Correspondent" for Underwriters and thereby acts as a managing general agent. Enviant does not insure the risk that is underwritten under any policy of insurance.

## I.     PROCEDURAL BACKGROUND

1.      At the hearing with the Court on January 5, 2024, the Court dismissed Plaintiffs' First Amended Complaint and ordered Plaintiffs to file a Second Amended Complaint that provided greater granularity and specificity with respect to some of Plaintiffs' allegations.  The Court also advised the parties at the hearing that in order to lessen the burden on the parties, supplemental briefing was appropriate to address new allegations and new issues raised in Plaintiffs' Second Amended Complaint.

2.      Accordingly, Defendants file their Supplemental Motion (I) to Dismiss Plaintiffs' Second Amended Complaint in the Adversary Proceeding Pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure; or (II) In the Alternative, to Require Plaintiffs to Join Necessary Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure (the "Supplemental Motion") to address Plaintiffs' new allegations and new issues.  Defendants incorporate herein, as if fully set forth at length, their prior Amended Motion to Dismiss [ECF # 52] ("Prior Amended Motion") and prior Reply [ECF # 57] ("Prior Reply").

## II.     PRELIMINARY STATEMENT

3.      As the Court knows, this is an insurance coverage dispute between Plaintiffs, Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("LBT") and David M. Dunn, as Liquidating Trustee of the LBR Liquidating Trust (the "Trustee," and, collectively with LBT, the "Plaintiffs"), and Defendants as to the priority of coverage among four towers of insurance coverage in relation to several underlying lawsuits filed in St. Croix, U.S. Virgin Islands[3] regarding alleged sudden and accidental chemical release events, also referred to as the "S&A Occurrences."

---

[3] Plaintiffs' Adversary Proceeding relates to five underlying lawsuits filed in federal district court in the U.S.V.I. The plaintiffs in the four proposed class action lawsuits pending in federal court have filed a motion for those cases to be consolidated, with a new complaint that adds and deletes some defendants.  The

4.      Although the Court ordered Plaintiffs to provide greater granularity and specificity in their allegations, they have failed to do so and continue to fail to state a claim upon which relief can be granted.

5.      Plaintiffs' two main positions continue to conflict and remain logically inconsistent. On one hand, Plaintiffs have alleged, and continue to allege, that Underwriters should pay for the <u>Limetree Entities</u>'[4] defense in the underlying lawsuits before any other insurer pays because the coverage in all towers is "concurrent" (*see* Appendix A to Plaintiffs' Second Amended Complaint).  Plaintiffs contend Underwriters should then seek contribution for such defense costs from the other insurers [ECF # 70 at ⁋ 4.].

6.      On the other hand, Plaintiffs allege that the insurance in the other three towers is "not valid and collectible" [ECF # 70 at ⁋ 5.].  Accordingly, pursuant to Plaintiffs' framing of the issues, the only available coverage to the Limetree Entities would be Underwriters' Policies because the other policies are not "valid and collectible insurance."  As such, Underwriters could not obtain contribution from the other insurers under Plaintiffs' circular arguments.

7.      It is illogical for the Limetree Entities to have four towers of insurance coverage available to them, but argue in this case that only one tower applies – the one tower that is excess of all the others.

---

Limetree Entities agreed to the consolidation. The Court has not yet ruled on the motion to consolidate.  If consolidated, the duties to defend of the various insurers may be impacted by the new pleadings. There are additional lawsuits against the Limetree Entities pending in territorial court in the U.S.V.I. that are not part of Plaintiffs' Adversary Proceeding. Underwriters have denied coverage to the Limetree Entities in relation to the lawsuits pending in territorial court. And, as noted above, Underwriters also denied coverage to the Limetree Entities in relation to the *Boynes* lawsuit pending in federal district court in the U.S.V.I.

[4] The Limetree Entities include LBT, Limetree Bay Refining LLC ("LBR"), and Limetree Bay Ventures, LLC ("LBV") and certain other subsidiaries or affiliates asserting claims under the policies issued by Underwriters.

8.      As discussed in Defendants' Prior Amended Motion and Prior Reply, Underwriters' Pollution Tower is excess of the other three towers of insurance with respect to the underlying claims against the Limetree Entities, which arise from four alleged separate S&A Occurrences.  Because the limits of liability of the other three towers of coverage have not yet exhausted, Underwriters' Policies have not been triggered.  Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted.

9.      As shown below, the Limetree Entities are well aware that Underwriters' Policies were placed as excess coverage for S&A Occurrences, and as such Underwriters' policies have not been triggered.

10.      With respect to their Second Amended Complaint, Plaintiffs continue to fail to state a claim upon which relief can be granted for the following reasons:

> A.  Plaintiffs have not pleaded with the granularity and specificity ordered by the Court to show that they have satisfied conditions to precedent to trigger the excess coverage under Underwriters' Policies;
>
> B.  Plaintiffs have not pleaded that they exhausted the coverage in the other three towers of coverage in order to trigger Underwriters' Policies;
>
> C.  Plaintiffs' allegation that they do not need to exhaust the coverage in the other towers as a condition precedent to triggering Underwriters' Policies because the policies in the other towers are not other "valid and collectible insurance" lacks merit, and furthermore, Plaintiffs' new allegations admit there is other "valid and collectible insurance;"
>
> D.  In addition, incontrovertible evidence from other insurers confirms there is other "valid and collectible insurance;"
>
> E.  Plaintiffs' new allegations questioning (1) whether Underwriters' primary policy in the Pollution Tower, also referred to as the "ESP Policy" (attached to Plaintiffs' Second Amended Complaint as Exhibit A) is an accurate version, and (2) whether Endorsement # 31 contains the operative insurance clause, are devoid of merit.  The Limetree Entities are well aware that Underwriters' Policies were placed as excess coverage for S&A Occurrences.  Incontrovertible evidence from the Limetree Entities' themselves demonstrates that the Limetree Entities knew and explicitly stated that the coverage they negotiated and purchased from Underwriters is excess

coverage for S&A Occurrences, and thus Plaintiffs' questioning of the ESP Policy and Endorsement 31 is wholly groundless;

F. Even entertaining Plaintiffs' view that the four towers of insurance *could* provide concurrent coverage (which Defendants dispute), Plaintiffs' argument falls flat because an analysis of the "other insurance" clauses in each of the four primary policies (consistent with the language in Underwriters' ESP Policy) also demonstrates that Underwriters' primary policy is still excess coverage for S&A Occurrences; and

G. Even entertaining Plaintiffs' view that the four towers of insurance could provide concurrent coverage (which Defendants dispute), Plaintiffs failed to plead with specificity that they have satisfied the applicable self-insured retentions[5] relating to the alleged four separate S&A Occurrences in order to trigger Underwriters' ESP Policy.

## II.     <u>INTRODUCTION</u>

### A.  <u>Summary of Plaintiffs' Allegations</u>

11.     Plaintiffs continue to dispute Underwriters' position that the Limetree Entities' other three towers of insurance must exhaust before Underwriters' policies are triggered. [ECF # 70 ¶ 3]. Plaintiffs also continue to allege that "[e]ven if the other insurance provision were a basis for Insurers to avoid providing coverage, it would not bar coverage here because there is no 'other valid and collectible insurance or indemnification' 'available for' losses Plaintiffs are seeking under Insurers' policies.'" [ECF 70 at ¶ 5.]

12.     Contrary to their conclusory assertions that there is no other valid and collectible insurance, Plaintiffs' new factual allegations in their Second Amended Complaint actually admit there is other valid and collectible insurance under the Contractor's Pollution Liability Tower (the "CPL"). Plaintiffs also appear to admit, in a roundabout way, that there is other valid and

---

[5] A self-insured retention is a dollar amount specified in the policy that must be paid by the policyholder before the policy will respond to a loss. Under an SIR, the insured (rather than the insurer) assumes the risk and pays the defense and/or indemnity costs associated with a claim until the SIR limit is reached. As the name states, it is a self-insurance mechanism used by insureds to manage insurance costs.

collectible insurance under the General Liability Tower (the "GL Tower"). With respect to the Owner Controlled Insurance Program General Liability Tower (the "OCIP GL Tower"), Plaintiffs provide only conclusory allegations, improper legal conclusions, and no factual specificity as required by the Court.  Moreover, Plaintiffs' position is contrary to the law. All of the above is discussed below.

13.    Although Plaintiffs refer to the primary policies in the other three towers of coverage throughout their Second Amended Complaint to argue about concurrent coverage and to argue that there is no other valid or collectible insurance, Plaintiffs failed to attach those policies as exhibits to their pleading. Defendants attach them hereto, which is proper.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").  "In so attaching, the defendant merely assists the plaintiff in establishing the basis for the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499.

14.    Plaintiffs now newly question whether Underwriters' primary policy, Policy No. ENV0000296-20, the Environmental Site Pollution Policy (the "ESP Policy"),[6] which they attached to their Second Amended Complaint as Exhibit A, is an accurate version of the policy. They allege that "[w]hether Exhibit A is an accurate version of the Primary Policy is a question of fact requiring discovery in this case because one or more of the endorsements was not contained in Plaintiffs' copy of the Primary Policy."  [ECF # 70 at ¶ 33.]  In addition, Plaintiffs also newly question Endorsement 31.  They allege that "Insurers have contended that an Endorsement No. 31 contains the operative other insurance clause that purportedly gives rise to a coverage defense . . .

---

[6] The ESP Policy is attached hereto as **Exhibit 1-O**.

7

Whether that is true requires discovery because Endorsement No. 31 was not contained in Plaintiffs' copy of the Primary Policy and was first obtained by counsel for Plaintiffs from Enviant in July 2022." [ECF # 70 at ¶ 62.]

15.     These allegations are odd at best.  Plaintiffs raise no fact questions requiring discovery on these issues.  There is no dispute the Limetree Entities made their claims under the ESP Policy with Endorsement 31 and also Underwriters' Commercial and Pollution Excess Follow Form (CAPE) Policy ("CAPE Policy"), Policy No. ENVX0000256-20,[7] which is the first layer of excess pollution coverage (attached to their Second Amended Complaint as Exhibit B).  The Limetree Entities never disputed the accuracy of the ESP Policy previously, and in fact, **they filed this Adversary Proceeding attaching the ESP Policy <u>with Endorsement 31</u> to each of their prior complaints**.  Thus, Plaintiffs' new allegations are red herrings.

16.     We are here on a Motion to Dismiss, which must be and is directed to Plaintiffs' complaint at issue.  This is Plaintiffs' Second Amended Complaint, which for the third time attaches the ESP Policy <u>with Endorsement 31</u>.  It is therefore this complaint and attached policy the Court and parties must focus on, not some unattached "mystery" policy hinted at through innuendo.  Curiously, Plaintiffs failed to attach to their Second Amended Complaint a copy of the alleged ESP Policy they claim they received.  If they are calling policy or endorsement accuracy into question, why did they not attach that copy of the policy to their Second Amended Complaint?  Further, as shown below by incontrovertible evidence, Plaintiffs' allegations, and assertion that discovery is needed, are wholly groundless.

17.     Plaintiffs' new arguments that question the ESP Policy and endorsements, for which they failed to attach the document they question, raise the issue of contract formation.  To

---

[7] The CAPE Policy is attached hereto as **Exhibit 1-P**.

further assist the Court in making elementary decisions as to whether Plaintiffs have stated a plausible claim for relief, Defendants attach hereto the Affidavit of Emmanuel Mkandawire of Enviant with attached documents to provide the Court with the background context of the ESP Policy formation.[8]   Courts may use "'objectively determinable facts and circumstances that contextualize the parties' transaction' to help clarify the parties' intent as expressed in the contract." *TXI Operations, LP v. City of McKinney, TX*, C.A. No. 4:20-cv-353; 4:20-cv-609, 2023 WL 161942, * 13 (E.D. Tex. Jan. 11, 2023). This includes evidence of the surrounding circumstances to provide the context that elucidates the meaning of the words in the contract. *Id.*; *see also In Re: KrisJenn Ranch, LLC*, 661 F.Supp.3d 654, 673 (W.D. Tex. 2023) (courts may consider extrinsic evidence of the facts and circumstances surrounding the contract's execution as an aid in the construction of the contract's language.)  Here, the evidence of the circumstances surrounding the formation of the ESP Policy shows that Plaintiffs have not stated, and cannot state, a plausible claim for relief.

### III.   ARGUMENT AND AUTHORITIES

**A.   The Limetree Entities Understand that the Pollution Tower is Excess Coverage for S&A Occurrences**

18.     As shown in Defendants' Prior Amended Motion and reiterated here, it is uncontroverted that the coverage the Limetree Entities purchased from Underwriters is excess coverage for S&A Occurrences.

19.     Contrary to Plaintiffs' conclusory allegations in their Second Amended Complaint that the Pollution Tower is not excess coverage, and contrary to Plaintiffs' new allegations questioning the ESP Policy and Endorsement 31, the Limetree Entities clearly understand that the

---

[8] If the Court wishes, pursuant to FRCP 12(d), it can treat a motion to dismiss as a motion for summary judgment under FRCP 56.

coverage they purchased from Underwriters for S&A Occurrences is excess to the Limetree Entities' other three towers of coverage.

20.     This is explicitly evidenced in an email from Gary Morrow, Risk Manager for the Limetree Entities, sent at the time of the S&A Occurrences, stating that the **"Pollution Legal Liability policy insurers . . . is excess to primary insurance in the OCIP[9] and Operations GL Policy."  Exhibit 1-Q**: Gary Morrow's email of May 17, 2021.[10]   The Limetree Entities' understanding of their insurance coverage was again reiterated in an email sent by Mr. Morrow to the Limetree Entities' insurance broker, Marsh, dated July 21, 2021, wherein he explains that the GL Tower (the "Operations casualty program") "has a $10 million SIR for GL and the PLL is excess to the GL and casualty tower for S&A pollution."  **Exhibit 1-R**: Gary Morrow's email of July 21, 2021.

21.     Accordingly, Plaintiffs' assertion that Underwriters' Policies are not excess coverage to the other towers is wholly without merit based on the Limetree Entities' clear understanding of the coverage they contracted for and purchased from Underwriters.

22.     When Lockton, the Limetree Entities' broker,[11] contacted Enviant in February 2020 to provide a quote for Underwriters to participate in the $100 million Pollution Tower, Lockton included an option for Underwriters' Policies/the Pollution Tower to sit excess of, and distinct in conditions from, the GL Tower for S&A Occurrences.  **Exhibit 1:** Affidavit of Emmanuel

---

[9]  The OCIP includes the Owner Controlled Insurance Program General Liability ("OCIP GL"), as well as the Contractor's Pollution Liability ("CPL"), as that was purchased as part of the OCIP Program.

[10] The Exhibits attached hereto **-- Exhibits 1-A** through **1-S --** are attested to as true and accurate copies in the Affidavit of Emmanuel Mkandawire of Enviant, which is attached hereto as **Exhibit 1**.

[11] Under the law, Lockton acts for its clients, the Limetree Entities, in brokering coverage and placing policies.  Therefore, Lockton's knowledge is imputed to the Limetree Entities.

Mkandawire of Enviant at ⸗ 3 (hereafter "Mkandawire Affidavit"), and **Exhibit 1-A:** Lockton's email to Enviant of February 20, 2020.

23.     The coverage negotiations between Lockton and Enviant continued over the next few months. On May 28, 2020, Enviant provided Lockton with a coverage proposal for Option 1, which was the option proposing coverage excess of, and distinct in conditions from, the general liability program for sudden and accidental pollution conditions. **Exhibit 1:** Mkandawire Affidavit at ⸗ 4, and **Exhibit 1-B:** Enviant's email of May 28, 2020 to Lockton and attached Quote.

24.     Enviant's Quote included a proposed Environmental Site Pollution Policy ("ESP Policy") with limits of $1 million and a $500,000 "Self-Insured Retention – Each Pollution Condition," as stated in proposed Endorsement 14.  The proposed ESP Policy also included an "Other Insurance Excess Over Certain Policies and Scheduled Indemnity, Oil and Gas Insurance Endorsement, as stated in proposed Endorsement 12.  Proposed Endorsement 12 explicitly stated that "Condition K. Other Insurance" in the ESP Policy is deleted and replaced by Endorsement 12. Proposed Endorsement 12 also stated that if other valid and collectible insurance is available for any loss, then the policy would provide excess insurance over any policy(ies) available for loss covered under this policy including but not limited to the policies appearing in the Schedule contained in Endorsement 12.  The Scheduled Insurance Policies to which the proposed ESP Policy would be excess were listed as "Primary and excess casualty of $100M)."  (The $100M was later increased to $280M). **Exhibit 1:** Mkandawire Affidavit at ⸗ 4, and **Exhibit 1-B:** Enviant's Quote. Enviant also provided Lockton with a Quote for a proposed CAPE Policy.  **Exhibit 1:** Mkandawire Affidavit at ⸗ 5, and **Exhibit 1-B:**

25.     On May 29, 2020, Lockton instructed Enviant to bind coverage under Option 1 and that Lockton "would work towards getting all of the subjectivities completed early next week."

Such "subjectivities" included Lockton providing Enviant with the full list of the insurers in the general liability program (the "GL Tower") to which Underwriters' policies would be excess so that the Schedule of underlying insurance could be completed.  **Exhibit 1:** Mkandawire Affidavit at ⁋ 6 and **Exhibit 1-C:**  Lockton's email to Enviant dated May 29, 2020.

26.     On May 29, 2020, Enviant confirmed with Lockton the bind order "per the quotes (Option 1 on the ESP quote and the CAPE quote)" and it advised Lockton about needing the subjectivities and that Enviant would provide the policy numbers as soon as possible.  **Exhibit 1:** Mkandawire Affidavit at ⁋ 7 and **Exhibit 1-D:**  Enviant's email to Lockton dated May 29,  2020.

27.     On June 1, 2020,  Enviant provided Lockton with the policy numbers for the ESP and CAPE policies and advised Lockton that Enviant needed to review the "GL and excess casualty policies that provide S&A coverage with cleanup coverage."  **Exhibit 1:** Mkandawire Affidavit at ⁋ 8 and **Exhibit 1-E:**  Enviant's email to Lockton dated June 1, 2020.

28.     On June 9, 2020, Lockton provided Enviant with binders for the lead policies in the GL Tower but not for all of the policies that complete the underlying GL tower. **Exhibit 1:** Mkandawire Affidavit at ⁋ 9 and **Exhibit 1-F:**  Lockton's email to Enviant dated June 9, 2020.

29.     On June 16, 2020, Lockton sent an email to Enviant advising that the underlying coverage in the GL Tower was bound for $110M and that Lockton expected to bind $250M underlying the following week.  Lockton attached to its email the "LimeTree Working Program Chart" (the "Lockton Chart") depicting the underlying general liability casualty lines, i.e., the GL Tower.  Among other things, the Lockton Chart included the identities of the insurers in the GL Tower known to Lockton at that time.   The top of the Lockton Chart specifically states that the **"$100M Pollution policy is excess and difference in conditions of casualty tower sudden and**

**accidental pollution.” Exhibit 1:** Mkandawire Affidavit at ⸿ 10 and **Exhibit 1-G***:* Lockton's

email to Enviant dated June 16, 2020 attaching the Lockton Chart (bold added).

30.      On June 16, 2020, Enviant provided Lockton with the Binder and Underwriters'

ESP Policy (Policy No. ENVP0000296-20). The ESP Policy included the “Other Insurance Excess

Over Certain Policies and Scheduled Indemnity, Oil and Gas Insurance Endorsement,” as set out

in Endorsement 12.  Endorsement 12 tracked the language of the proposed Endorsement 12 in the

Quote.  Endorsement 12 to the ESP Policy explicitly states that “Condition K. Other Insurance” is

deleted in its entirety and replaced by Endorsement 12. Endorsement 12 also states that “[i]f other

valid and collectible insurance or indemnification is available for any **loss** covered under this

Policy, the **insurer's** obligations are limited as follows:  1. This insurance shall be excess insurance

over any policy(ies) which are available for **loss** covered under this Policy including but not limited

to the policies scheduled below on this Endorsement including any renewals or replacements

thereof.  Where this insurance is excess the **insurer** will only pay its share of those amounts of

loss that exceed the amounts covered by such insurance policies.”  The Scheduled Insurance

Policies to which the ESP Policy is excess were listed to include the primary and first layer excess

policies in the GL Tower with their respective policy numbers.  At that time, because Lockton had

not provided Enviant with the complete list of all insurers in the GL Tower, the list of the

underlying Scheduled Insurance Policies was not yet complete.  **Exhibit 1:** Mkandawire Affidavit

at ⸿ 11 and **Exhibit 1-H:** Binder and the attached ESP Policy.

31.      On October 23, 2020, Enviant provided Lockton with the formal ESP Policy, Policy

No. ENVP0000296-20, and CAPE Policy, Policy No. ENVX0000256-20.  The ESP Policy again

included the “Other Insurance Excess Over Certain Policies and Scheduled Indemnity, Oil and

Gas Insurance Endorsement,” as set out in Endorsement 12.  Endorsement 12 to the ESP Policy

contained the same language as before, making the ESP Policy excess to the GL Tower for sudden and accidental pollution conditions.  Endorsement 12 again explicitly states that "Condition K. Other Insurance" is deleted in its entirety and replaced by Endorsement 12. Endorsement 12 also states again that that "[i]f other valid and collectible insurance or indemnification is available for any **loss** covered under this Policy, the **insurer's** obligations are limited as follows:  1. This insurance shall be excess insurance over any policy(ies) which are available for **loss** covered under this Policy including but not limited to the policies scheduled below on this Endorsement including any renewals or replacements thereof."  The Scheduled Insurance Policies to which the ESP Policy is excess were again listed to include the primary and first layer excess policies in the GL Tower with their respective policy numbers.  At that time, because Lockton had still not yet provided Enviant with the full list of all insurers in the GL Tower, the list of the underlying Scheduled Insurance Policies was not yet complete.  **Exhibit 1:** Mkandawire Affidavit at ¶ 12 and **Exhibit 1-I:** Enviant's email to Lockton dated October 23, 2020 attaching the ESP Policy.

32.     Endorsement 12, as discussed above, appeared in the issued ESP Policy and stated as follows:

| Endorsement Title | | | |
|---|---|---|---|
| Other Insurance Excess Over Certain Policies and Scheduled Indemnity, Oil and Gas Endorsement | | | |
| Named Insured | | | Endorsement Number |
| Limetree Bay Ventures, LLC | | | 012 |
| Policy Form | Policy Number | Policy Period | Enviant Endorsement Number |
| ESP | ENVP0000296-20 | 06/01/2020 to 06/01/2021 | Manuscript |
| Issued by | | | Effective Date of Endorsement |
| Certain Underwriters at Lloyd's, London | | | 06/01/2020 |

**I.   THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OTHER INSURANCE EXCESS OVER CERTAIN POLICIES AND SCHEDULED INDEMNITY, OIL AND GAS INSURANCE ENDORSEMENT**

It is hereby agreed that Section **VI. CONDITIONS**, Paragraph **K. Other Insurance**, is deleted in its entirety and replaced with the following:

II.      K. Other Insurance

If other valid and collectible insurance or indemnification is available for any **loss** covered under this Policy, the **insurer's** obligations are limited as follows:

1. This insurance shall be excess insurance over any policy(ies) which are available for **loss** covered under this Policy including but not limited to those policies scheduled below on this Endorsement including any renewals or replacements thereof. Where this insurance is excess the **insurer** will only pay its share of those amounts of **loss** that exceed the amounts covered by such insurance policies.

Scheduled Insurance Policies:

| Insurer | LIBERTY INTERNATIONAL UNDERWRITERS |
|---|---|
| Policy # | MLIB-1000654-05 |
| Policy Period | 06/01/2020 to 06/01/2021 |
| Limit of Liability | $2,000,000 per incident, $4,000,000 |

| Insurer | Navigators |
|---|---|
| Policy # | HO20LIA15380502 |
| Policy Period | 06/01/2020 to 06/01/2021 |
| Limit of Liability | $5,000,000 per incident, $5,000,000 |

| Insurer | Continental Underwriters |
|---|---|
| Policy # | CXS 11040.060 |
| Policy Period | 06/01/2020 to 06/01/2021 |
| Limit of Liability | $5,000,000 per incident, $5,000,000 |

| Insurer | Other |
|---|---|
| Policy # | B0713ENCAS2000011 |
| Policy Period | 06/01/2020 to 06/01/2021 |
| Limit of Liability | $40,000,000 per incident, $40,000,000 |

| Insurer | Navigators Specialty Insurance Company |
|---|---|
| Policy # | HO2LIA15380503 |
| Policy Period | 06/01/2020 to 06/01/2021 |
| Limit of Liability | $50,000,000 per incident, $50,000,000 |

| Insurer | Axis |
|---|---|
| Policy # | EAU646295/01/2020 |
| Policy Period | 06/01/2020 to 06/01/2021 |
| Limit of Liability | $10,000,000 per incident, $10,000,000 |

33.      The reference in the Schedule to "Other" Policy No. B0713ENCAS2000011 refers

to the primary policy in the GL Tower insured by two London Syndicates -- Chaucer Group and

Apollo Syndicate.  This is reflected in the first layer GL policy which is attached hereto as **Exhibit 1-L**. Additionally, the Schedule's reference to AXIS Policy No. EAU646295/01/2020 refers to the first layer excess policy in the GL Tower.

34.    As the above shows, Endorsement 12 has always been part of the ESP Policy and has always contained a Schedule showing the GL Tower as underlying insurance that has to exhaust before the ESP Policy is triggered.

35.    On May 26, 2021, Lockton, still acting on behalf of the Limetree Entities, finally provided Enviant with a link to copies of actual policies (but not all) as well as  bind orders, for the insurers in the underlying GL Tower.  **Exhibit 1:** Mkandawire Affidavit at ⁋ 13 and **Exhibit 1-J:** Lockton's email to Enviant dated May 26, 2021.  Upon receipt of that link, Enviant compiled the full list of the underlying Scheduled Insurance Policies.  The complete list of those insurers is reflected in Endorsement 31, which contains the same language as Endorsement 12 except that the underlying Schedule of Insurance Policies in Endorsement 31 (noted as totaling $280,000,000), includes the complete list of the insurers in all twelve layers of coverage in the GL Tower to which the ESP Policy is excess for sudden and accidental pollution conditions.  Because Endorsement 31 contains the complete list of the underlying Schedule of Insurance Policies by insurer and policy number, and Endorsement 12 had not, Endorsement 31 states that Endorsement 12 is deleted. Enviant provided Endorsement 31 to Lockton on April 8, 2022 and Lockton acknowledged same on April 11, 2022.  **Exhibit 1:** Mkandawire Affidavit at ⁋ 14 and **Exhibit 1-K:** Enviant's email to Lockton dated April 8, 2022 attaching Endorsement 31, and Lockton's email to Enviant dated April 11, 2022.

36.    Accordingly, it is very disingenuous for Plaintiffs to allege or imply that the Limetree Entities did not know the ESP Policy was excess of the GL Tower for S&A Occurrences

because Endorsement 12 clearly shows on its face that the coverage is excess, as it was always intended to be.  Furthermore, as discussed above, the Limetree Entities' Risk Manager clearly understands that the Pollution Tower is excess of the other towers and he even advised others within Limetree and outside of Limetree of this fact when reporting on the S&A Occurrences.  **Exhibit 1-Q:** Gary Morrow's email of May 17, 2021; **Exhibit 1-R:** Gary Morrow's email of July 21, 2021.

37.     In sum, Plaintiffs' allegations questioning the ESP Policy, endorsements, or questioning whether the Pollution Tower was placed as excess coverage to the GL Tower for S&A Occurrences,  fail on their face.  The ESP Policy shows that the coverage purchased by the Limetree Entities' provides excess coverage for S&A Occurrences, even if the Limetree Entities' counsel in this case contends (with no evidentiary support) they were unaware of it.[12]

**B.     There is Other Valid and Collectible Insurance**

38.     Plaintiffs admit that *if* Underwriters' Policies provide excess coverage in this matter, they must exhaust the coverage in the other towers before Underwriters' Policies are triggered and they have not done so.  [ECF # 70 ¶¶ 5 and 64]. In an attempt to avoid having to satisfy this condition precedent, Plaintiffs simply allege in conclusory fashion that there is no "other valid and collectible insurance" and thus there is no coverage to exhaust.  [ECF # 70 ¶¶ 5 and 66.]  Plaintiffs' allegations fail for numerous reasons.

---

[12]  Plaintiffs make an odd allegation that the insuring language of the ESP Policy does not state it is an excess policy and thus the insuring agreements are triggered as primary coverage.  [ECF # 70 ¶ 51.] Plaintiffs fail to acknowledge that policy endorsements can change or modify insuring language, as is the case here.  *Coakley Bay Condo. Ass'n v. Continental Ins. Co*., 770 F.Supp. 1046, 1050 (D.V.I. 1991) (citing the Virgin Islands Insurance Code, which specifically provides: "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy. 22 V.I.C. 846.").

i.    **CPL**[13]

39.    Plaintiffs actually admit in their Second Amended Complaint that there is "other valid and collectible insurance." They admit that their CPL insurer, AIG/Lexington, has agreed to defend them.  [ECF # 70 ⸿ 69.]  Therefore, Plaintiffs' factual allegations, on their face, concede there is other valid and collectible insurance, and that such insurance must be exhausted prior to Underwriters' Policies having any duties.  Notwithstanding that admission of fact, Plaintiffs assert that the CPL should not be considered "other valid and collectible insurance" because (1) the CPL has not yet paid for, or reimbursed them for, defense costs; (2) the CPL has  only agreed to partially defend under a reservation of rights; (3) the CPL denied coverage in the *Shirley* lawsuit and has refused to pay costs to defend a preliminary injunction; and (4) the CPL has not provided coverage to the Trustee. [ECF # 70 ⸿ 69.]

40.    Plaintiffs' assertions lack merit.  First, they confuse the words "collectible" with "collected."[14]  Because the CPL has agreed to defend Plaintiffs, the CPL clearly is "other valid and collectible insurance."  Further, simply because the CPL allegedly denied coverage in a single case, *Shirley*, refused to pay defense costs in relation to a particular preliminary injunction proceeding, and has not provided coverage to the Trustee, does not render the CPL invalid and uncollectible insurance.  If that were the standard, then the Limetree Entities would have no coverage at all because ***all*** the insurers in each tower have issued reservations of rights asserting certain coverage defenses and some have also issued denials in particular matters.  For instance, it is undisputed that Underwriters have denied coverage to the Limetree Entities in the *Boynes*

---

[13] The CPL Policy is attached hereto as **Exhibit 1-N**.

[14] "Collectible" is defined in The Law Dictionary as 1. Valid; sufficient in law; effectual; unobjectionable. 2. Responsible; solvent; able to pay an amount specified.  thelawdictionary.org/good/

lawsuit[15] and Underwriters also refused to pay defense costs in relation to the preliminary injunction proceeding. If Plaintiffs' position was the standard for judging what is "valid and collectible insurance," then Underwriters' policies would also be considered invalid and uncollectible insurance, and as such, this very lawsuit against Underwriters should be dismissed for failure to state a claim on that basis alone.

41.     In sum, Plaintiffs' argument that the CPL is not valid and collectible insurance is devoid of merit – it is wholly without factual or legal support.

### ii.      GL Tower[16]

42.     Plaintiffs allege that the GL Tower has refused to defend Plaintiffs or pay any amount to Plaintiffs, and therefore, that coverage is not valid or collectible. [ECF # 70 ¶ 68.] This is a conclusory allegation for which Plaintiffs provide no factual specificity or legal support. Plaintiffs, however, admit that the Limetree Entities may eventually receive reimbursement from other insurers. [ECF # 70 para. 5.] Such allegation is likely a reference to the GL Tower because the first layer policy in the GL Tower (insured by London Syndicates Chaucer Group and Apollo Syndicate) provides for the reimbursement of defense costs as opposed to providing a defense, which is the coverage Limetree paid for. Accordingly, Plaintiffs' allegation that the Limetree Entities may eventually receive reimbursement from other insurers is an admission that there is other valid and collectible insurance.

---

[15] Underwriters have also denied coverage to the Limetree Entities in relation to the lawsuits pending in U.S.V.I. territorial court.

[16] The GL Primary Policy is attached as **Exhibit 1-L**.

43.     Furthermore, and significantly, the GL Tower's insurers in the first layer of coverage above the $10 million self-insured retention have specifically represented to the Limetree Entities and their counsel as follows:

> As advised in the various reservation of rights (which are reiterated) the GL Tower is above a $10,0000,000 SIR.  We have not received evidence of its exhaustion.  In addition, Endorsement No. 2, Designated Operations, specifically places the coverage afforded by the Limetree Bay Restart Project Policies as primary to the GL coverage (acknowledging their payments would apply as against the SIR). Specifically listed therein are the primary and two excess OCIP layers and the Contractor's Pollution Policy.[17]

**Exhibit 1-S**:  Email dated August 15, 2023 from Jenny Michel, coverage counsel for the first layer in the GL Tower, sent to the Limetree Entities' defense counsel in the underlying lawsuits, as well as to many cc's, **including the Limetree Entities' several counsel in this Adversary Proceeding.**[18]

44.     Accordingly, these insurers did not deny coverage, but rather reserved rights because the underlying coverage provided by the OCIP GL and CPL have not exhausted.[19] Furthermore, neither Underwriters' Policies nor the Pollution Tower are even mentioned in the email as being insurance that has to exhaust prior to the GL Tower being triggered because it is clear the Pollution Tower is excess of the GL Tower, the OCIP GL Tower, and the CPL.   The coverage position of the GL Tower's  insurers quoted above on the priority of coverage among the towers of insurance corroborates Defendants' positions and arguments.

---

[17]  This is exactly what Defendants have argued in their Prior Amended Motion [ECF # 52 at ¶¶ 58-60], which is incorporated herein: Endorsement No. 2 in the primary GL policy makes the GL Tower excess of the OCIP GL Tower and the CPL.

[18] Other portions of this email have been redacted to preserve potential confidentiality concerns.

[19]  On information and belief, the primary policy in the GL Tower has reserved rights on multiple issues, as have all the insurers in all towers.

45.      In sum, Plaintiffs' argument that the GL Tower is not valid and collectible insurance is devoid of merit.

### iii.      OCIP GL Tower[20]

46.      As to the OCIP GL Tower, Plaintiffs allege that the OCIP GL Tower has refused to defend Plaintiffs or pay any amount to Plaintiffs and therefore that coverage is not valid or collectible.  [ECF # 70 ⁋ 68.]  It is unclear whether Plaintiffs' admission that the Limetree Entities may eventually receive reimbursement from other insurers [ECF #70 ⁋ 5] is a reference to the OCIP GL Tower. If so, it is an admission that the OCIP GL Tower is other valid and collectible insurance.

47.      If it is not, then Plaintiffs' allegation is conclusory, with no specificity or factual or legal support. "Valid and collectible insurance" is not a defined term.  Courts note that it "has widespread use in the insurance industry . . . and has a well established meaning.  Generally, the clause refers to insurance which is legally valid and is underwritten by a solvent carrier." *Hellman v. Great Am. Ins. Co.*, 66 Cal.App.3d 298, 304 (Cal. Ct. App. 1977); *Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 642 (D.C. 1996) (no other valid and collectible insurance is "meant to exclude invalid or illegal insurance, such as insurance which is voidable for misrepresentation, and uncollectible insurance, such as insurance of an insolvent company."); *Friedfeld v. Royal Indem. Co.*, 167 So.2d 586, 587 (Fla. Dist. Ct. App. 1964) ("valid and collectible" insurance means a policy that is legal and valid, as distinguished from one that is invalid such as for fraud, or uncollectible such as for insolvency).

48.      In *Liberty Mut. Ins. Co.,* the court noted that "[n]either of these situations – misrepresentation or insolvency – nor anything of their ilk is present regarding the Liberty policy,"

---

[20] The OCIP Primary Policy is attached hereto as **Exhibit 1-M**.

and therefore the court found that the Liberty policy could not be characterized as "no other valid and collectible insurance."

49. Here, Plaintiffs have not alleged that the OCIP GL Tower (or any other tower) is not valid and not collectible insurance due to misrepresentation or insolvency nor anything of that ilk. Thus, the OCIP GL Tower cannot simply be characterized as "no other valid and collectible insurance." No specific facts have been alleged that support this.

50. In addition, the court in *Friedfeld* held that "collectability" means "collectability at the time of the accident" in question. 167 So.2d at 588. Therefore, the fact that the policy in that case later became "uncollectible" because of the policyholder's acts or omissions in failing to furnish timely notice to the insurer was not material to the analysis. *Id*. at 587-88.

51. Further, some courts hold that because "valid and collectible insurance" is not defined, whether a policy is "valid and collectible insurance" is a legal determination that must be made by a court as a matter of law. *Wake County Hosp. Sys., Inc. v. Nat'l Cas. Co*., 804 F.Supp. 768, 770 (E.D.N.C. 1992) ("Since the term 'other valid and collectible insurance' is not defined in either the Wake or National policies, the determination as to the meaning of that term is one for the court to make as a matter of law.") Therefore, a policyholder's or an insurer's *ipse dixit* that a policy is not valid and collectible insurance is not sufficient. A court must make the coverage determination by analyzing the policy. Accordingly, Plaintiffs would need to join the OCIP GL primary policy to the lawsuit as a necessary party in order for the Court to make this determination.

52. Lastly, Plaintiffs' position that the OCIP GL is not other valid and collectible insurance makes little sense from a practical standpoint because any policyholder could circumvent the excess nature of coverage, or prevent the application of black letter law holding that excess coverage is not triggered until the underlying coverage is exhausted, by simply stating

that an underlying insurer's refusal to provide coverage qualifies as "no other valid or collectible insurance."

53.     In sum, Plaintiffs' argument that the OCIP GL Tower is not valid and collectible insurance fails as a matter of law.

## C. An Evaluation of the "Other Insurance" Clauses in All Primary Policies Demonstrates that the ESP Policy is Excess Coverage for S&A Occurrences

54.     Even entertaining Plaintiffs' argument that the four towers provide concurrent coverage (which Defendants dispute), Plaintiffs are not correct because an analysis of the "other insurance" clauses in each of the primary policies demonstrates that Underwriters' ESP Policy is still excess of the other three towers for S&A Occurrences.  That is, each of the primary policies independently align themselves in the priority of coverage as underlying coverage consistent with the ESP Policy's Endorsement 12 and later Endorsement 31, which align these policies as underlying coverage to which the ESP Policy is excess.

### i.      OCIP GL "Other Insurance" Clause

55.     The "other insurance" clause in the OCIP primary policy provides as follows:

**OTHER INSURANCE AMENDMENT**

This endorsement modifies insurance provided under the following:

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, Paragraph 4. Other Insurance a. Primary Insurance** is deleted and replaced with the following:

**4.     Other Insurance**
     If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

     **a.     Primary Insurance**
          *This insurance is primary except when Paragraph b. below applies.*  **(bold, shading and italics added)**

          If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

Notwithstanding the foregoing paragraph, this insurance is primary to any other insurance, whether primary, excess or any other basis, purchased by or available to a Named Insured, on which the Named Insured is also listed as a Named Insured. We will not seek contribution from such insurance for defense or indemnity.

**b.     Excess Insurance**
**(1)**  This insurance is excess over:
    **(a)**  Any of the other insurance, whether primary, excess, contingent or on any other basis:
        (i)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        (ii)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        (iii)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        (iv)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage **A**-Bodily Injury And Property Damage Liability.

    **(b)**  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

    **1.**  When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

\* \* \*

(bold, shading and italics added) (**Exhibit 1-M**)

56.     This "other insurance" clause shows that the OCIP GL primary policy remains as primary insurance in this case because the exceptions that could allow it to apply as excess coverage do not apply.

### ii.      CPL "Other Insurance" Clause

57.     The other insurance clause in the CPL provides as follows:

**V. CONDITIONS**

**1.   HOW OTHER INSURANCE APPLIES**

Where other insurance may be available for **Loss** covered under this Policy, the **Insured** shall promptly upon request of the Company provide the Company with copies of all such policies. If other valid and collectible insurance is available to the **Insured for Loss** covered by this Policy, the Company's obligations are limited as follows:

1. ***Except as set forth in Subparagraph 3. below, this insurance is primary,*** and the Company's obligations are not affected unless any of the other insurance is also primary. In that case, the Company will share with all such other insurance by the method described in Paragraph 2. below. (bold, shading and italics added)

2. If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

3. This insurance is excess where the **Named Insured** is an insured under another Contractor's Pollution Liability insurance policy, issued by the Company or by an affiliate of the Company, applying to or purporting to apply to a project, where **Covered Operations** are performed by or on behalf of the **Named Insured** in connection with such project. To the extent that a **Claim,** or part thereof, is not covered by any such Contractor's Pollution Liability insurance policy, this Policy shall be primary and non-contributory with respect to such **Claim** or part thereof. Further, the "Each Loss" deductible under this policy shall be satisfied by the deductible and/or limits of liability paid under such Contractor's Pollution Liability insurance for **Loss** which is also covered by this Policy and arises out of any one **Pollution Condition** or out of the same, related or continuous **Pollution Conditions.**

The Company will pay only its share of the amount of **Loss,** if any, that exceeds the total amount of all such other valid insurance. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend.

(bold, shading and italics added) (**Exhibit 1-N**)

58.    This "other insurance" clause shows that the CPL also remains as primary insurance because the exceptions that could allow it to apply as excess coverage do not apply in this case.

### iii.    GL Tower "Other Insurance" Clause

59.    As discussed above and in Defendants' Prior Amended Motion, Endorsement 2 to the primary policy in the GL Tower explicitly makes the GL Tower excess of the OCIP GL Tower and the CPL.

60.     The primary GL Policy also contains an "other insurance" clause that states as follows:

> **14. OTHER INSURANCE**
>
> If other insurance applies to a "Claim" also covered by this Policy, this Policy will apply excess of the other insurance regardless of whether the other insurance is valid or collectable. ***However, this provision will not apply if the other insurance is specifically written to be excess of this Policy.***

(bold, shading and italics added) (**Exhibit 1-L**)

61.     This "other insurance" clause shows that the primary policy in the GL Tower will apply as excess of other insurance unless the other insurance was written to be excess of the GL policy, which brings the matter full circle to Underwriters' Policies, which were specifically written to be excess of the GL for S&A Occurrences.

### iv.     Pollution Tower "Other Insurance" Clause

62.     Both Endorsement 12 and Endorsement 31 in the ESP Policy state that Paragraph **K. Other Insurance**, is deleted in its entirety and replaced with the following:

> **K. Other Insurance**
> If other valid and collectible insurance or indemnification is available for any **loss** covered under this Policy, **the insurer's** obligations are limited as follows:
>
> **1.** ***This insurance shall be excess insurance over any policy(ies) which are available for loss covered under this Policy including but not limited to those policies scheduled below on this Endorsement including any renewals or replacements thereof.*** **Where this insurance is excess the insurer will only pay its share of those amounts of loss that exceed the amounts covered by such insurance policies.**
>
> SCHEDULED INSURANCE POLICY(IES)
>
> . . .

(bold, shading and italics added) (**Exhibit 1-O**)

63.     The "other insurance" language in the ESP Policy shows that it applies as excess insurance coverage over any policies available for S&A Occurrences,[21] which includes the scheduled and unscheduled policies.

64.     In comparing the "other insurance" clauses in all four primary policies, the ESP Policy is the only one containing an "other insurance" clause written to explicitly provide coverage that is excess when there are other policies available to cover the loss.  Therefore, on its face, the ESP Policy does not provide coverage that is concurrent with the primary policies in the other three towers.  Moreover, courts hold that such excess coverage is not considered concurrent coverage because excess coverage is not regarded as other collectible insurance since it is not available to the policyholder until the primary insurance has been exhausted.  *U.S. Fid. & Guar. Co. v. Liberty Mut. Ins. Co*., 327 F.Supp. 462, 466 (M.D. Pa.. 1971); *Hellman*, 66 Cal.App.3d at 305; *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch*., 444 S.W.2d 583, 587 (Tex. 1969).

65.     In sum, the centerpiece of Plaintiffs' arguments that all the primary policies provide concurrent coverage has no facial plausibility.  Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted.

**D.     Plaintiffs' Allegations Show that Satisfaction of the Self-Insured Retentions Under the ESP Policy Have Not Been Met**

66.     Even entertaining Plaintiffs' argument that the four towers provide concurrent coverage (which is, as explained above, without merit), Plaintiffs failed to plead with specificity that they have satisfied the applicable self-insured retentions relating to the four separate S&A Occurrences.  As such, Plaintiffs have not alleged facts triggering the ESP Policy.

---

[21] As discussed above, the underlying claims involve sudden and accidental chemical releases as opposed to gradual and long-term pollution.

67.     There is no dispute that there are at least four separate S&A occurrences alleged in the underlying lawsuits filed in St. Croix.  Under the ESP Policy, a separate $500,000 self-insured retention ("SIR")[22] applies to each S&A Occurrence, as follows:

| Endorsement Title | | | |
|---|---|---|---|
| Self-Insured Retention Endorsement | | | |
| Named Insured | | Endorsement Number | |
| Limetree Bay Ventures, LLC | | 014 | |
| Policy Form | Policy Number | Policy Period | Enviant Endorsement Number |
| ESP | ENVP0000296-20 | 06/01/2020 to 06/01/2021 | Manuscript |
| Issued by | | | Effective Date of Endorsement |
| Certain Underwriters at Lloyd's, London | | | 06/01/2020 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SELF-INSURED RETENTION AMENDATORY ENDORSEMENT**

It is hereby agreed as follows:

1.   That the Deductible – Each Pollution Condition Column in Item 6. of the Declarations page is deleted in its entirety and replaced with "Self-Insured Retention – Each Pollution Condition".[23]

2.   All references to "Deductible" in the Policy are deleted in their entirety and replaced with "Self- Insured Retention".

3.   That Section **III. LIMITS OF LIABILITY AND DEDUCTIBLE,** Paragraph **E. Deductible** is deleted in its entirety and replaced with the following:

**III. E. Self-Insured Retention**
For each Coverage Section, the applicable Self-Insured Retention - Each Pollution Condition set forth in Item 6 of the Declarations applies separately to **loss** arising from each **pollution condition** or related, continuous or repeated **pollution conditions**. In the event a **pollution condition** or related, continuous or repeated **pollution conditions** gives rise to coverage under multiple Coverage Sections under this Policy, only the highest applicable Self-Insured Retention shall apply.

* * *

68.     Yet Plaintiffs fail to specifically allege how the four separate SIRs have been satisfied or that they even have been satisfied.  Plaintiffs' only factual allegations in their Second

---

[22]  **Exhibit 1-O:**  ESP Policy, Declarations, Item 6.
[23]  *See id.*

Amended Complaint that are at all relevant to this issue are that (1) they "have spent millions of dollars, and will continue to incur expenses, defending themselves in the Underlying Lawsuit" [ECF # 70 ⁋ 21.], and (2) their "legal expense has far exceeded the total of the self-insured retention and the $1,000,000 limit of the Primary Policy" [ECF # 70 ⁋ 60.].

69.     Because Plaintiffs' Second Amended Petition fails to allege with granularity that they have satisfied four self-insured retentions, which are conditions to precedent to triggering the ESP Policy, Plaintiffs have failed to allege a plausible claim for relief.

**E.     Dismissal Is Warranted Pursuant to Fed. R. Civ. P. 12(b)(6)**

70.     Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss Plaintiffs' Second Amended Complaint because it fails to state a claim upon which relief can be granted for all of the reasons discussed above.  Plaintiffs have not stated factual allegations or pleaded any law showing that their alleged right to relief is plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007); FED. R. CIV. P. 12(b)(6).

**F.     Enviant and the Absent Insurers**

71.     Because Defendants' Prior Amended Motion discusses why Enviant should be dismissed from this action, Defendants simply remind the Court they seek dismissal of Enviant on the further grounds that the Pollution Policies unequivocally state that Enviant "is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever."  Defendants do not repeat their arguments in this regard but rather refer the Court to their Prior Amended Motion and Prior Reply. [ECF # 52 at ⁋⁋ 41-48  and ECF # 57]

72.      Similarly, because Defendants' Prior Amended Motion discusses why Plaintiffs should be required to join the Absent Insurers to this action, if the Court does not dismiss this

action, Defendants do not repeat their arguments in this regard but rather refer the Court to their Prior Amended Motion and Prior Reply.  [ECF # 52 at ¶¶ 49-67 and ECF # 57]

### PRAYER

For the reasons set forth herein, Defendants respectfully urge this Court to (1) dismiss Plaintiffs' claims against Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs' Second Amended Complaint fails to state plausible claims for relief, and/or alternatively, order Plaintiffs to join QBE, Lexington/AIG, and Chaucer and Apollo as necessary parties to this matter.  Defendants also ask the Court to order such other and further relief as this Court deems just and appropriate.


Respectfully submitted,

**OKIN ADAMS BARTLETT CURRY LLP**

By:  /s/ *David L. Curry, Jr.*
    Matthew S. Okin
    Texas Bar No. 00784695
    Email: mokin@okinadams.com
    David L. Curry, Jr.
    State Bar No. 24065107
    Email: dcurry@okinadams.com
    1113 Vine St. Suite 240
    Houston, Texas 77002
    Tel: (713) 228-4100
    Fax: (888) 865-2118

**SHACKELFORD, BOWEN, MCKINLEY & NORTON, LLP**

By: */s/ Jay W. Brown*
     **Jay W. Brown**
     Texas Bar No. 03138830
     jbrown@shackelford.law
     **Hilary C. Borow**
     Texas Bar No. 00787106
     hborow@shackelford.law
     717 Texas Avenue | 27th Floor
     Houston, Texas 77002
     Telephone: (832) 415-1801
     Fax: (832) 565-9030

     **ATTORNEYS FOR THE DEFENDANTS**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Bankruptcy Procedure via the Court's CM/ECF service upon filing.

     */s/ David L. Curry, Jr.*
     David L. Curry, Jr.